[No. 678-3. Division Three. October 11, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD JOHNSON, *Appellant.*

*Richard L. Cease* and *Byron G. Powell,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *LeRoy C. Kinnie, Deputy,* for respondent.

McINTURFF, J.—Defendant appeals from a conviction in May 1966 of two counts of indecent liberties, and from a judgment revoking his probation in June 1972. The facts are many and confusing, having occurred over a period of 6 years. Additional problems of continuity have occurred because defendant has been represented by six lawyers.

Upon conviction of two counts of indecent liberties, the defendant, in June 1966, was given a deferred sentence and placed on probation for 5 years, conditioned upon, among other stipulations, treatment by a psychiatrist.

In April 1969 defendant was arrested and charged with the crimes of arson and state vagrancy; however, the charge of arson was dismissed on motion of the prosecuting attorney in 1970, and the vagrancy charge was dismissed in May 1972 for failure to prosecute.

On September 16, 1969 a bench warrant was issued by Spokane County Superior Court for alleged violations of the order of probation. On December 2, 1969 a motion for an order revoking probation was filed by the prosecuting attorney; and on December 12, 1969 defendant's counsel requested a psychiatrist to determine if defendant was able to appreciate his peril and aid in his own defense.

After examination by psychiatrist Sol Levy, M.D., defendant was committed to Eastern State Hospital. A stay order concerning the hearing on the motion for revocation was entered on December 18, 1969, based upon a determination that defendant could not appreciate his peril or aid in his own defense. Thereafter, John Lambert, M.D., another psy-

chiatrist, examined the defendant, and on November 13, 1970 another stay order of the revocation hearing was entered based upon Dr. Lambert's opinion that defendant's condition was unchanged.

On February 2, 1971 defendant was transferred from Eastern State Hospital to Washington State Penitentiary. On November 19, 1971 our Supreme Court granted an order remanding defendant to superior court for a further hearing on the question of defendant's ability to appreciate the nature of his peril and assist in his own defense. As a consequence the superior court, on February 28, 1972, appointed Doctors Lambert and Levy to a sanity commission. They returned opinions that the defendant could now appreciate his peril and aid in his own defense.

On June 19, 1972 a revocation hearing was held, the defendant's probation was revoked, and sentence entered on the original conviction of May 4, 1966.

Defendant appeals from the original conviction of May 1966, contending: (1) there was insufficient evidence to find him guilty of the two counts of indecent liberties; (2) he was not afforded due process at the revocation hearing; and (3) the trial court abused its discretion in revoking his probation and imposing sentence.

■ We turn first to defendant's contention that insufficient evidence existed to sustain the jury verdict of guilty on the two counts of indecent liberties. In this respect defendant argues that the evidence is insufficient because it is based on the uncorroborated testimony of the victim. The law in this state, however, involving sex crimes, does not require corroboration. The direct and positive testimony of the complaining witness, even though uncorroborated and denied by the accused, is sufficient to present a jury question. *See State v. Kosanke,* 23 Wn.2d 211, 160 P.2d 541 (1945); *State v. Galbreath,* 69 Wn.2d 664, 419 P.2d 800 (1966). As noted in *State v. Randecker,* 79 Wn.2d 512, 517-18, 487 P.2d 1295 (1971):

> The fact that a trial or appellate court may conclude the evidence is not convincing, or may find the evidence hard

to reconcile in some of its aspects, or may think some evidence appears to refute or negative guilt, or to cast doubt thereon, does not justify the court's setting aside the jury's verdict.

The sole question is whether or not there is substantial evidence to support the jury verdict. We have read the record and find it to be replete with evidence to support the verdict. We find no error.

Defendant next urges that the trial court erred in not granting a continuance at the revocation hearing, so that the court would be able to consider a defense of insanity. At the probation revocation hearing on June 19, 1972, defendant's counsel moved for a continuance of the hearing so that he might present evidence that the defendant did not know right from wrong at the time he violated the terms of his probation. By way of oral motion, defendant's counsel informed the trial court that on the morning of the hearing he spoke with Dr. Lambert and learned for the first time that it was Dr. Lambert's opinion that at the time defendant was alleged to have committed the violations of his probation he did not know right from wrong. The trial court denied the requested continuance on the basis that (1) the defense of insanity was not timely; (2) that a written plea of the defense of insanity had not been filed; and (3) that the absent evidence of mental culpability does not necessarily apply to the sanity of the defendant at the time of the violations. Defendant urges on appeal that the denial of this motion for a continuance prevented him from putting on a defense and denied him an opportunity to explain the claimed violations.

As early as 1935 Mr. Justice Cardozo, writing for the court in *Escoe v. Zerbst*, 295 U.S. 490, 493, 79 L. Ed. 1566, 55 S. Ct. 818 (1935), while recognizing that a probation revocation hearing differed in many respects from a full-blown criminal trial, made it clear that a probationer was entitled to some semblance of due process, and stated:

Clearly the end and aim of an appearance before the court must be to enable an accused probationer to ex-

plain away the accusation. The charge against him may have been inspired by rumor or mistake or even downright malice. He shall have a chance to say his say before the word of his pursuers is received to his undoing.

In *Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967), the court held a probationer is entitled to be represented by appointed counsel at a combined revocation and sentencing hearing. The court reasoned that counsel is required at every stage of a criminal proceeding, including sentencing, or substantial rights of the criminal accused may be affected. The court concluded that counsel must be provided for an indigent at sentencing, even when it is accomplished as part of a subsequent probation or revocation proceeding. However, as noted by the Supreme Court in the recent case of *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973):

> But this line of reasoning does not require a hearing or counsel at the time of probation revocation in a case . . . , where the probationer was sentenced at the time of trial.

However, even though probation revocation is not a stage of criminal prosecution, when one is entitled to a full panoply of his constitutional rights, a revocation hearing may result in a loss of conditional liberty, and due process standards must be met. *See Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); *Gagnon v. Scarpelli*, *supra*. At the hearing the probationer must have an opportunity to be heard and to show, if he can, that he did not violate the conditions; or if he did, that circumstances in mitigation suggest the violation warrants action other than revocation.

The state urges that insanity is not a defense to the revocation of probation because probation is a rehabilitative measure and is not a matter of right but a matter of grace, privilege or clemency. The state, therefore, concludes that since revocation proceedings are not criminal actions they do not fall within the insanity statute, and the defense of insanity does not lie to this type of hearing. Although we

agree that insanity is not per se a defense to probation revocation, the trial court in its discretion may allow evidence to mitigate or otherwise explain away alleged violations. *See Gagnon v. Scarpelli, supra; State v. Riddell*, 75 Wn.2d 85, 88, 449 P.2d 97 (1968). Fundamental fairness—the touchstone of due process—requires that the trial court consider whether the appellant knew the difference between right or wrong at the time the alleged violations of probation occurred, not as a defense to the alleged violations, but to make it possible for the trial court to have all the information necessary to make the judgment justice demands. Considering the circumstances presented we believe defendant should have been granted a continuance to afford him the opportunity to present evidence of his mental state at the revocation hearing. We are not convinced his attorney was derelict in failing to bring the matter to the court's attention at an earlier time.

Defendant next urges that the trial court erred when it allowed the probation officer to testify to statements made to him by the defendant while in jail and without having given defendant the warnings required by *Miranda*.[1]

The sole witness for the state was Mr. Robert Enright, state probation parole officer, who was assigned to supervise the defendant. On May 5, 1969 Enright, after visiting the defendant probationer in the Spokane County Jail while there under the charge of state vagrancy, wrote a violations report to the court, charging him with four violations: (1) vagrancy; (2) having a firearm in his possession; (3) alleged second-degree arson; and (4) associating with another probationer. The record reflects that the reported violations 1 to 3 were confessed to by the defendant while he was visited by Mr. Enright in the Spokane County Jail on April 23, 1969 and on April 30, 1969.

The state contends that *Miranda* rights are inapplicable in that a probation revocation proceeding is not a criminal proceeding, and to inject the *Miranda* protection

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

at this point of the proceedings would be to require a full-blown criminal trial and would be toxic to the whole probation process. Probation revocation should not be equated to a full-blown criminal prosecution because society has already been put to the burden of proving beyond a reasonable doubt that defendant was guilty of the crime. Further, the *Miranda* warnings turn on Fifth Amendment protections, which are not per se applicable at this state of the proceedings. Nevertheless, since the conditional liberty of a probationer is valuable, whether that liberty be said to be a right or a privilege, the question presented is: Does due process require that a probation officer warn the defendant, *who is in custody,* that his statements may be used against him in a revocation hearing? A revocation hearing is not part of the criminal prosecution. *United States v. Johnson,* 455 F.2d 932 (5th Cir. 1972). The probationer does not have the same gambit of rights as the defendant accused of a crime. He has been convicted and stands accused of violating the terms of his probation. Under *Morrissey v. Brewer, supra,* the probationer has the right to face and cross-examine all witnesses, as well as explain away any testimony of the state.

In a probation revocation proceeding, the minimum requirements of due process are analogous to a parole revocation proceeding. These include:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact-finders as to the evidence relied on and reasons for revoking [probation or] parole." *Morrissey* v. *Brewer, supra,* at 489.

*Gagnon v. Scarpelli, supra* at 786.

In the instant case, the defendant confessed acts which

violated the terms of probation. The defendant has the right to deny or explain away the probation officer's testimony. More is not needed for compliance with due process protections in a probation revocation hearing. To hold otherwise (that warnings would have to be given), the purpose of probation would be materially affected and the probationer-probation officer relationship would be strained if a carte blanche exclusionary rule were applied to every office visit and noncustodial or custodial contact.

At this juncture it is necessary, for clarity, to note that the question of whether evidence obtained by a probation officer from a probationer without giving *Miranda* warnings should be excluded from subsequent criminal *prosecutions* against probationer is not before this court.

■ Defendant next urges that the court erred in not excluding the communications between the probation officer and the defendant because the same is and should be privileged. Many interesting public policy arguments are presented for such a privilege. However, we feel that the legislature is the proper forum for such arguments. As stated in *Cunningham v. State*, 488 S.W.2d 117, 121 (Tex. Crim. App. 1972), quoting from 1 McCormick & Ray, *Evidence* § 502, pp. 424-25 (2d ed.):

> "The mere fact that information was communicated in confidence or under pledge of secrecy does not raise a privilege. And in the absence of statute the courts have rarely extended to other relationships the protection which the common law afforded to communications between attorney and client and husband and wife. . . ."

In Washington we have no statute granting this privilege and we do not believe it appropriate to do so by judicial fiat.

Reversed and remanded for a revocation hearing, with direction the court allow presentation of evidence concerning defendant's ability to know right from wrong at the time of the alleged violations, and to reconsider its previous determination in accordance with this opinion.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied November 14, 1973.

Review denied by Supreme Court January 24, 1974.