[Nos. 75357-1; 76464-6;   En Banc.]
76561-8.
Argued March 8, 2005.    Decided July 21, 2005.

THE STATE OF WASHINGTON, *Petitioner*, v. MICHAEL CHRISTOPHER CANFIELD, *Respondent*.

THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND D. DEMRY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. DONALD C. SPEIRS, *Appellant*.

*Michael C. Canfield,* pro se.

*John D. Knodell, Prosecuting Attorney for Grant County,* and *Teresa J. Chen, Deputy,* for petitioner State.

*David B. Koch* and *Dana M. Lind* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellants Demry and Speirs.

*Janet G. Gemberling,* for respondent Canfield.

*Norm Maleng, Prosecuting Attorney for King County,* and *Patrick J. Preston, Deputy,* and *Gregory M. Banks, Pros-*

*ecuting Attorney for Island County*, and *Joshua Choate, Deputy*, for respondent State.

¶1 CHAMBERS, J. — Allocution is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence. It is the defendant's opportunity to plead for mercy and present any information in mitigation of sentence. Washington recognizes the right of a defendant to allocute at sentencing. However, whether a defendant who violates the conditions of a suspended sentence is entitled to allocution at a revocation hearing is a question of first impression in this court. We conclude that a defendant at a revocation hearing has a limited right to allocute. A denial of that right must, however, be raised at the revocation hearing in order to preserve the issue for appeal.

## FACTS

¶2 CANFIELD. Michael C. Canfield pleaded guilty to child molestation and was sentenced to 89 months in prison. His prison sentence was suspended pursuant to a special sex offender sentencing alternative (SSOSA).[1] Some time later the Department of Corrections filed a notice of violation and recommended revocation of Canfield's suspended sentence. The court held a revocation hearing on November 8, 2002. Canfield was invited to testify but declined to do so after conferring with his attorney. The court revoked Canfield's suspended sentence and ordered execution of the 89 month sentence. The trial court did not solicit a statement from

---

[1] A SSOSA is a special procedure authorized by the Sentencing Reform Act of 1981, chapter 9.94A RCW, whereby a sentencing judge may suspend a sex offender's felony sentence if the offender meets certain eligibility criteria defined in the statute. RCW 9.94A.670(2). As part of the SSOSA, the trial court may order sexual deviancy evaluation and treatment. RCW 9.94A.670(3).

Canfield prior to revoking the sentence. Canfield appealed. The Court of Appeals reversed because the trial court failed to invite allocution and remanded the case for a new sentencing hearing. *State v. Canfield*, 120 Wn. App. 729, 86 P.3d 806 (2004).

¶3 SPEIRS. Like Canfield, Donald C. Speirs pleaded guilty to child molestation. He was sentenced to 68 months in prison, which was suspended pursuant to a SSOSA. The State filed a report contending that he had violated the terms of his SSOSA, and at a revocation hearing on December 11, 2003, the court found that Speirs had failed to make satisfactory progress in treatment and that he willfully violated the conditions of his SSOSA. Without soliciting a statement from Speirs, the court revoked Speirs' SSOSA.

¶4 DEMRY. Raymond D. Demry was convicted of second degree rape and first degree kidnapping and sentenced to 63 months in prison followed by 24 months of community placement. He served his time and was released from prison. But Demry was reincarcerated at least three times for violations of his community placement. On October 31 and November 14, 2003, revocation hearings were held. The court found that six of seven alleged violations were willful and imposed sanctions of 60 days for each violation for a total of 360 days. The judge failed to ask Demry if he wished to speak before the sentence was imposed and refused to allow Demry to speak despite Demry's request that he be allowed to "say something" at the conclusion of the hearing. Demry Report of Proceedings (DRP) at 72. We granted review and consolidated these three cases. *State v. Canfield*, 152 Wn.2d 1028, 103 P.3d 200 (2004).

## THE NATURE OF THE RIGHT OF ALLOCUTION

¶5 The United States Supreme Court has said that the denial of the right of allocution is "an error which is neither jurisdictional nor constitutional," nor is it "a fundamental defect which inherently results in a complete miscarriage of

justice." *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). The right of allocution has its roots in common law. *Green v. United States*, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961) ("The design of [the federal allocution rule] did not begin with its promulgation; its legal provenance was the common-law right of allocution."). At common law, the "object of allocution was to afford the prisoner an opportunity to move in arrest of judgment pleading specific legal defenses available to him." Jonathan Scofield Marshall, Comment, *Lights, Camera, Allocution: Contemporary Relevance or Director's Dream?*, 62 TUL. L. REV. 207, 210 (1987). Among these defenses were that certain judicial requirements had not been met, that the defendant was insane, or that the person sentenced was not the person tried. *Id.* In recognizing the common law right of allocution, the United States Supreme Court has observed that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green*, 365 U.S. at 304.

## THE STATUTORY RIGHT OF ALLOCUTION IN WASHINGTON

¶6 This state has afforded defendants the right to allocute by statute since its inception. *In re Pers. Restraint of Echeverria*, 141 Wn.2d 323, 333-34, 6 P.3d 573 (2000). Former RCW 10.64.040 provided in part: "When the defendant appears for judgment, he must be . . . asked whether he h[as] any legal cause to show why judgment should not be pronounced against him." After the legislature passed the Sentencing Reform Act of 1981,[2] it repealed RCW 10.64.040 (LAWS OF 1984, ch. 76, § 33), which had already been superseded by former CrR 7.1(a)(1), 82 Wn.2d 1159-60 (1973). *Echeverria*, 141 Wn.2d at 334. Former CrR 7.1(a)(1) read in part: "Before disposition the court . . . shall ask the defendant if he wishes to make a statement in his own

---

[2] Ch. 9.94A RCW.

behalf and to present any information in mitigation of punishment." CrR 7.1 was rewritten in 1984 and recodified as CrR 7.2, 101 Wn.2d 1115-16 (1984). The allocution provision was deleted from the rules since allocution was "covered in more detail in RCW 9.94A.110." Comment to CrR 7.2, 101 Wn.2d at 1116. RCW 9.94A.110 was recodified in 1999 as RCW 9.94A.500, but the allocution provision remained unchanged.

¶7 RCW 9.94A.500(1) states in relevant part:

> *The court shall* consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history, and *allow arguments from* the prosecutor, the defense counsel, *the offender*, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer *as to the sentence to be imposed*.

(Emphasis added.)

¶8 Canfield and Speirs claim that they were denied their right of allocution at their SSOSA revocation hearings, while Demry claims that he was denied his right of allocution at his sentence violation hearing, because the sentencing judge failed to solicit their statements in allocution. They claim that RCW 9.94A.500, entitled "Sentencing hearing—Presentence procedures," is the source of this right. The statute states in relevant part: "[t]he court shall . . . allow arguments from . . . the offender . . . as to the sentence to be imposed." RCW 9.94A.500(1). This court has said that "trial courts should scrupulously follow [the presentence procedures] by directly addressing defendants during *sentencing hearings*, asking whether they wish to say anything to the court in mitigation of sentence, and allowing 'arguments from . . . the offender[s] . . . as to the sentence to be imposed.' " *Echeverria*, 141 Wn.2d at 336-37 (emphasis added). Doing so "unequivocally acknowledge[s] the right of allocution as a significant aspect of the sentencing process." *Id.* at 337. Whether the *revocation* court must perform the same inquiry as a sentencing court is the subject of these consolidated cases.

¶9 Sentencing hearings and a revocation hearing serve different purposes. It is at the sentencing hearing that the judge must decide whether or not to sentence the defendant to prison and, if so, what the appropriate duration of such confinement should be. It is at the sentencing hearing that the right of the accused to make a personal statement is vital. At a revocation hearing, the inquiry is different. The court has already decided to sentence the defendant to prison and for how long. At sentencing the defendant has an absolute liberty interest at stake, but at a revocation hearing the defendant's enjoyment of this liberty interest is conditioned upon complying with terms of the suspension imposed.

¶10 The text of the statute is limited to sentencing hearings. Unlike at a *sentencing* hearing, law enforcement representatives and victims are neither present nor invited to speak at a SSOSA *revocation* hearing. *Compare* RCW 9.94A.670(4) *with* RCW 9.94A.670(10). Thus, the need for allocution as a means of countering and contradicting these statements is absent at the revocation hearing. Allocution may, however, still serve an important function at a revocation hearing. While the defendant may have more at stake at the initial sentencing hearing, he still has a conditional liberty interest at stake at revocation. There is no reason to deny a defendant the opportunity to allocute at revocation since allowing a defendant a few moments of the court's time is minimally invasive. *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir. 1991).

## MINIMUM PROCEDURAL DUE PROCESS REQUIREMENTS

¶11 To find a basis for allocution at a revocation, we must look beyond RCW 9.94A.500. We find federal analysis of the rights associated with parole revocation hearings persuasive. The United States Supreme Court addressed the rights to which one is entitled at a parole revocation hearing in *Morrissey v. Brewer*, 408 U.S. 471,

489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). In *Morrissey*, the Court observed: "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* at 480.

¶12 The *Morrissey* Court held that the Fourteenth Amendment guarantees only minimal due process requirements including:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body . . . ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489.

¶13 In *Dahl*, we held that the *Morrissey* due process requirements applied at revocation hearings. *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). A revocation hearing, however, "should not be equated to a full-blown criminal prosecution because society has already been put to the burden of proving beyond a reasonable doubt that defendant was guilty of the crime." *State v. Johnson*, 9 Wn. App. 766, 772, 514 P.2d 1073 (1973).

¶14 In the cases before us, the only implicated *Morrissey* requirement is the "opportunity to be heard in person." In each case, the defendants were afforded the opportunity to testify on their own behalf. This does not necessarily mean that these defendants were afforded their "opportunity to be heard." While there is no separate constitutional right to allocution, it cannot reasonably be said that allocution is never part of a defendant's right "to be heard in person." Accordingly, we hold that in the context of a revocation hearing, the defendant must be allowed to allocute if he so chooses.

## PRESERVATION OF ERROR

¶15 Though there is a limited procedural due process right to allocution, there is no separate federal or state constitutional right to allocution. *Hill*, 368 U.S. at 428; *Echeverria*, 141 Wn.2d at 332. Generally, this court does not consider even constitutional errors for the first time on appeal unless the error is manifest. *See* RAP 2.5(a) ("appellate court may refuse to review any claim of error which was not raised in the trial court"); *State v. McDonald*, 138 Wn.2d 680, 691, 981 P.2d 443 (1999) ("appellate courts will generally not consider issues raised for the first time on appeal"). In these cases, we find the error was not manifest and decline to hear the defendants' claims of error raised the first time on appeal.

¶16 Due process requires that a defendant be given an opportunity to be heard in person at a revocation hearing. Given our common law and statutory history of affording allocution and the legitimate interest of a defendant to personally address the court, we conclude that where a defendant asserts his right to allocution, the court should allow him to make a statement in allocution. Since none of the defendants here requested their right of allocution, they cannot now be heard to complain about the denial of that right, raised for the first time on appeal. While we do not impose any specific formal requirements for preserving the right of allocution at this time, we note that the defendant must give the court some indication of his wish to plead for mercy or offer a statement in mitigation of his sentence.

¶17 Among these cases, only Demry's involved an attempt by the defendant to address the court personally. However, Demry failed to give the court adequate notice that he wished to offer a plea in mitigation of his sentence or to plead for leniency.[3] The record shows that he was

---

[3] While the court was reviewing and signing the order modifying probation and jail commitment, the following exchange occurred between Demry and the court:

MR. DEMRY: Your Honor, may I please say something?

THE COURT: Go ahead.

simply attempting to reargue the evidence introduced at his hearing. As such, he failed to preserve a right to allocute.

## CONCLUSION

¶18 The right of allocution is not an independent constitutional right. In Washington, the right of allocution at sentencing is statutory. A revocation hearing is not a sentencing hearing for purposes of the statutory right of allocution. However, we recognize a limited right of allocution based upon the common law right of allocution and the minimal due process requirements at revocation hearings. Thus, while allocution itself is not a right of constitutional magnitude, the constitutional "right to be heard in person" includes a right to allocution if the defendant requests it. Since we generally do not hear such claims of error for the first time on appeal, none of the defendants here are entitled to relief on those grounds. We remand Canfield's case to the Court of Appeals for consideration of his remaining issues.

MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶19 ALEXANDER, C.J. (concurring/dissenting) —I agree with the majority that at a revocation hearing, a defendant has only a limited right of allocution. However, with respect to petitioner Raymond D. Demry, I believe the defendant properly invoked this right, thus preserving error for appeal. I would, therefore, remand Demry's case for a new revocation hearing.

---

MR. DEMRY: What Mr. Lewis did, judge, is, he didn't took—

THE COURT: Actually, Mr. Demry, let me interrupt.

I thought you had something else to ask. I've already concluded the hearing and any testimony. Let me interrupt for a moment.

I have signed the order and we are in recess.

DRP at 72. Mr. Lewis was Demry's parole officer. The exchange here indicates that the court initially granted Demry's request to speak. Since Demry sought only to reargue the evidence, however, the trial judge appropriately concluded the hearing. The purposes of allocution are to allow a defendant to make a plea for leniency or in mitigation of his sentence. Relitigation of the evidence is not appropriate.

¶20 The majority concludes "that where a defendant asserts his right to allocution, the court should allow him to make a statement in allocution." Majority at 707. Though the majority does "not impose any specific formal requirements for preserving the right of allocution," it does impose on a defendant an obligation to "give the court some indication of his wish to plead for mercy or offer a statement in mitigation of his sentence." *Id.* at 707. The majority holds that in these cases, "[s]ince none of the defendants . . . requested their right of allocution, they cannot now be heard to complain about the denial of that right, raised for the first time on appeal." *Id.* at 707. With respect to Demry, specifically, the majority holds that he "failed to give the court adequate notice that he wished to offer a plea in mitigation of his sentence or to plead for leniency," *id.*, concluding that "[t]he record shows that he was simply attempting to reargue the evidence introduced at his hearing." *Id.* at 707-08.

¶21 I respectfully disagree with the majority's analysis of the exchange between Demry and the trial court judge. This exchange went as follows:

> MR. DEMRY: Your Honor, may I please say something?
>
> THE COURT: Go ahead.
>
> MR. DEMRY: What Mr. Lewis did, judge, is he didn't took—
>
> THE COURT: Actually, Mr. Demry, let me interrupt.
>
> I thought you had something else to ask. I've already concluded the hearing and any testimony. Let me interrupt for a moment.
>
> I have signed the order and we are in recess.

Demry Report of Proceedings (DRP) at 72.

¶22 I believe Demry's statements clearly "[gave] the court some indication of his wish to plead for mercy or offer a statement in mitigation of his sentence," or may have given such an indication, had Demry not been interrupted and cut off by the judge. Majority at 707. Because he was interrupted after uttering only a few words and not allowed to continue, we cannot know whether Demry sought to

"reargue the evidence," as the majority claims or to "offer a plea in mitigation of his sentence or to plead for leniency." *Id.* at 707-08.

¶23 It is true that Demry did not say "your honor, I wish to exercise my right of allocution." However, as a defendant speaking on his own behalf, who lacked knowledge of arcane legal terminology, Demry should not be faulted for his poor locution in attempting allocution. For a defendant in Demry's position, it is hard to imagine how he or she could more clearly express his or her desire to make a statement to the court than by saying, "[y]our Honor, may I please say something?," as Demry did in this case. DRP at 72. As the United States Supreme Court observed in *Green v. U.S.*, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961), "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Here, in "speak[ing] for himself," Demry did not get the opportunity to demonstrate his "halting eloquence" before being cutoff by the judge.

¶24 Because I believe Demry's request to "please say something" to the court was a sufficient "indication of his wish to plead for mercy or offer a statement in mitigation of his sentence," and, therefore, preserved the error for appeal, I would remand Demry's case for a new revocation hearing.

C. JOHNSON, SANDERS, and J.M. JOHNSON, JJ., concur with ALEXANDER, C.J.

After modification, further redconsideration denied September 1, 2005.