169 P.3d 508 (2007)
STATE of Washington, Respondent,
v.
David Elvin McCORMICK, Appellant.
No. 58255-1-I.
Court of Appeals of Washington, Division 1.
October 22, 2007.
*509 Eric Broman, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Mary Kathleen Webber, Snohomish County Prosecutors Office, Everett, WA, for Respondent.

OPINION PUBLISHED IN PART
BAKER, J.
¶ 1 David McCormick appeals the trial court's order revoking his special sexual offender sentencing alternative (SSOSA).[1] The court found McCormick had violated the conditions of his suspended sentence for first degree rape of a child by frequenting a place where minors are known to congregate, and by failing to complete a sexual deviancy treatment program. We affirm.

I.
¶ 2 David McCormick was convicted of first degree rape of a child under the age of 12. At age 55, McCormick had no previous criminal history. The court suspended his sentence of 123 months, and sentenced him to a SSOSA. In doing so, the court imposed a number of conditions, including requirements that he not frequent areas where minor children are known to congregate, and that he participate and make progress in sexual deviancy treatment.
¶ 3 After three years of therapy, the court relieved McCormick from continuing treatment.
¶ 4 One year later, the court was notified that McCormick had initiated conversation with two female minors. His Community Corrections Officer (CCO) also reported that McCormick's niece, who lived in California, had revealed that McCormick had sexually molested her and her sister on numerous occasions approximately 30 years before. McCormick signed a stipulated agreement acknowledging he had contact with minor children, and agreed to re-enroll in sexual deviancy treatment.
¶ 5 McCormick was back in court the following year. This time the court found he had violated the conditions of his SSOSA by visiting the Everett Baptist Church, the Twin Lakes Park, and Everett High School, all areas where children are known to congregate. McCormick was sentenced to 120 days in jail, and ordered once again into treatment.
¶ 6 In March 2006, McCormick's CCO received information from one of McCormick's housemates that McCormick had been visiting a food bank located in the Immaculate Conception Elementary School, and had on numerous occasions made vulgar sexual comments about young girls. As churches and schools are considered places where children are known to congregate, the CCO determined that McCormick was in violation of the terms of his supervision. The CCO informed McCormick's therapist that McCormick would be taken into custody for violating the conditions of his SSOSA.
¶ 7 The therapist then terminated McCormick's participation in the sexual deviancy program he had been attending. In a letter summarizing the termination, the therapist noted two previous similar incidences to *510 which McCormick had responded with denial and blame. He also noted that McCormick always claimed to be avoiding high-risk situations. The therapist concluded that keeping McCormick in sex offender treatment was no longer clinically justified.
¶ 8 At a court hearing, the State offered a written statement by McCormick's housemate, David Bralley, but did not call Bralley himself as a witness. In the statement, Bralley asserted that McCormick had visited the food bank regularly, and made numerous sexual comments about children.
¶ 9 McCormick's CCO testified that she had provided him with a list of places he was barred from visiting, including schools, churches, and day care centers. The CCO also testified that the high school McCormick had been sanctioned for visiting was located across the street from the food bank.
¶ 10 The court found McCormick had once again frequented a place where minors are known to congregate, and failed to complete a sexual deviancy treatment program. It revoked McCormick's SSOSA and sentenced him to 123 months in prison.
¶ 11 McCormick now appeals.

II.
¶ 12 The SSOSA statute provides that a sentencing court may suspend the sentence of a first time sexual offender if the offender is shown to be amenable to treatment.[2] An offender's SSOSA may be revoked at any time if a court is reasonably satisfied that an offender has violated a condition of his suspended sentence or failed to make satisfactory progress in treatment.[3] Once a SSOSA is revoked, the original sentence is reinstated.[4] Revocation of a suspended sentence rests within the discretion of the court.[5] A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds.[6]
¶ 13 The revocation of a suspended sentence is not a criminal proceeding.[7] Accordingly, the due process rights afforded at a revocation hearing are not the same as those afforded at the time of trial.[8] An offender facing revocation of a suspended sentence has only the minimal due process rights afforded one facing revocation of probation or parole.[9]
¶ 14 Minimal due process at a revocation proceeding entails: (a) written notice of the claimed violations, (b) disclosure to the parolee of the evidence against him, (c) the opportunity to be heard, (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation), (e) a neutral and detached hearing body, and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation.[10] These requirements exist to ensure that the finding of a violation of a condition of a suspended sentence will be based upon verified facts.[11]
¶ 15 A revocation hearing should not be equated to a full-blown criminal prosecution, because society has already been put to the burden of proving beyond a reasonable doubt that the defendant was guilty of the crime for which the sentence was imposed.[12]
Willfulness
¶ 16 McCormick argues that the court was required to find that his violations were *511 willful before it could revoke his suspended sentence. He asserts that the court's failure to make a finding of willfulness equates to strict liability, and that revocation without a finding of willfulness violates due process.
¶ 17 In support of his argument he cites a number of cases addressing willfulness in relation to conviction. State v. Sisemore[13] deals with jury instructions regarding a no-contact order violation. Likewise, Lambert v. People of the State of California[14] (distinguishing wholly passive conduct from willful behavior), State v. Anderson,[15] and State v. Warfield[16] (both firearm possession cases) deal with findings of willfulness required for conviction. But because the due process rights afforded at a revocation hearing are not the same as those afforded at the time of trial, the cited cases are not relevant to McCormick's argument.
¶ 18 He also relies on Bearden v. Georgia[17] and Smith v. Whatcom County District Court.[18] In those cases, the offender's probation was revoked due to failure to pay financial obligations. The Supreme Court recognized the fundamental unfairness in punishing a probationer by revoking his probation when he has made all reasonable efforts to pay a fine but was not able to do so through no fault of his own.[19] The Court held that willfulness was not a requirement in all situations.[20]
¶ 19 Reflecting that moral imperative, RCW 9.94A.634 (covering noncompliance with condition or requirement of sentence) specifies willfulness as an element of noncompliance only with regard to legal financial obligations and restitution.[21]
¶ 20 Under the Sentencing Reform Act of 1981[22] (SRA), the trial court may revoke a SSOSA suspended sentence whenever the defendant violates the conditions of the suspended sentence, or the court finds that the defendant is failing to make satisfactory progress in treatment.[23] RCW 9.94A.670(10) does not require that a violation be willful. Proof of violations need not be established beyond a reasonable doubt, but must reasonably satisfy the court that the breach of condition occurred.[24]
¶ 21 This court addressed the issue of willfulness in State v. Gropper:[25]
RCW 9.94A.200(2)(c)[26] does not require a court to consider willfulness before ordering incarceration for a violation of a condition that does not involve a financial obligation. By its terms, that section of the statute applies to orders "regarding payment of legal financial obligations and . . . community service obligations." Nothing in the statute suggests that section (2)(c) should be applied to any other type of violation.[[27]]
¶ 22 We follow the clear precedent of the Gropper decision and hold that no finding of willfulness was required.
¶ 23 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
WE CONCUR: DWYER and COX, JJ.
NOTES
[1] RCW 9.94A.670.
[2] RCW 9.94A.670. McCormick was sentenced pursuant to former RCW 9.94A.120 (2001), subsequently recodified as RCW 9.94A.505.
[3] RCW 9.94A.670(10).
[4] State v. Dahl, 139 Wash.2d 678, 683, 990 P.2d 396 (1999).
[5] State v. Badger, 64 Wash.App. 904, 908, 827 P.2d 318 (1992).
[6] State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003).
[7] Dahl, 139 Wash.2d at 683, 990 P.2d 396.
[8] Dahl, 139 Wash.2d at 683, 990 P.2d 396.
[9] Dahl, 139 Wash.2d at 683, 990 P.2d 396.
[10] Dahl, 139 Wash.2d at 683, 990 P.2d 396.
[11] Dahl, 139 Wash.2d at 683, 990 P.2d 396.
[12] State v. Canfield, 154 Wash.2d 698, 706, 116 P.3d 391 (2005) (quoting State v. Johnson, 9 Wash.App. 766, 772, 514 P.2d 1073 (1973)).
[13] 114 Wash.App. 75, 55 P.3d 1178 (2002).
[14] 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).
[15] 141 Wash.2d 357, 5 P.3d 1247 (2000).
[16] 119 Wash.App. 871, 80 P.3d 625 (2003).
[17] 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).
[18] 147 Wash.2d 98, 52 P.3d 485 (2002).
[19] Bearden, 461 U.S. at 668-69, 103 S.Ct. 2064.
[20] Bearden, 461 U.S. at 669 n. 9, 103 S.Ct. 2064.
[21] RCW 9.94A.634(3)(d).
[22] Ch. 9.94A RCW.
[23] RCW 9.94A.670(10).
[24] Badger, 64 Wash.App. at 908, 827 P.2d 318.
[25] 76 Wash.App. 882, 888 P.2d 1211 (1995).
[26] Recodified as RCW 9.94A.634.
[27] Gropper, 76 Wash.App. at 885-86, 888 P.2d 1211.