IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79734-4-I |
| Respondent, | DIVISION ONE |
| v. | |
| ARLAND DECASTRO ABBOTT, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — The State charged Arland Abbott with indecent liberties. Only one potential juror in his venire, and no empaneled juror, was African American. The jury found Abbott guilty as charged. Abbott appeals.

To demonstrate that a jury does not represent a fair cross-section of the community, a defendant must establish that systematic exclusion led to the underrepresentation of a distinctive group. Abbott does not satisfy this requirement. Nor does he establish his claims of ineffective assistance of counsel or prosecutorial misconduct. We affirm.

BACKGROUND

Abbott worked as a massage therapist. His coworker alleged that he touched her genital area while giving her a massage. The State charged Abbott with indecent liberties.

Abbott is African American. During voir dire, Abbott's counsel noted to the trial court that, of the jurors in the pool, only "two or three" appeared to be people

Citations and pin cites are based on the Westlaw online version of the cited material.

of color, and that only one person appeared to be African American. Defense counsel stated that he had "grave concern that the panel . . . does not represent the community, and that therefore, would deny [Abbott] his constitutional right to a fair trial of his peers." Abbott did not move to supplement the venire, and the trial court did not do so. Once the court empaneled the jury, defense counsel noted for the record that a few jurors appeared to be people of color, but none appeared to be African American.

Before trial, defense counsel, the State, and the court discussed a $60,000 settlement between the victim and Abbott's employer. Defense counsel said that he considered the settlement evidence relevant because it supported an inference that the victim had a financial motive for her allegations against Abbott, and that he planned to ask her about it on cross-examination. Defense counsel also said that he did not believe that Abbott was a party to the suit underlying the settlement. The State indicated that if Abbott's counsel planned to ask the victim about the settlement, it would bring it up during its case in chief and ask the victim about the settlement on direct examination. The trial court warned defense counsel that the jury might infer guilt based on the settlement.

Later, but still before trial, defense counsel learned that Abbott was a named party to the suit but had not been served. Defense counsel did not move to exclude the settlement evidence.

The State referred to the settlement in its opening statement, stating: "You're also going to learn from [the victim] that she filed a civil lawsuit against

2

Mr. Abbott and [his employer], and that case settled.  It settled out of court for $60,000."  In his opening statement, defense counsel implied the victim had a financial motivation for her allegations.  During direct examination of the victim, the State asked about the settlement and who she sued—the victim responded that she sued Abbott, among others.

Then, outside the presence of the jury, defense counsel expressed concern to the court that the jury may have the impression that Abbott was served with the suit and contributed to the $60,000 payment.  Defense counsel asked the court for permission to ask the victim if she knew if Abbott had been served with the suit or if he had contributed to the payment.  The trial court stated it would allow those questions if the victim knew the answers.  The trial court also warned that asking such questions risked opening the door to prejudicial information.  Abbott's counsel ultimately did not ask the victim any questions about the settlement.

During closing argument, defense counsel continued to pursue the financial motivation theory and stated that there were "60,000 reasons" why the victim might have made her allegations.  The State, in its closing argument, indicated that the jury could find Abbott guilty if it believed the victim's testimony about his conduct.

The jury found Abbott guilty as charged.

ANALYSIS

Abbott makes three claims that he says warrant reversal of his conviction. First, he says that his jury was unconstitutionally under representative of the community. Second, he says that his trial counsel performed ineffectively with respect to evidence of the $60,000 settlement. And third, he says that the State committed prosecutorial misconduct in closing argument.

A. Jury Composition

Abbott says that the trial court violated his state and federal constitutional right to a jury of his peers because only one of the potential jurors was African American. The State responds that Abbott has no constitutional right to a jury of any particular composition and that he has not shown the jury composition violated his constitutional rights. We conclude that Abbott has not borne his burden of establishing that its composition violated his constitutional rights.

Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has a right to a jury that is representative of their community. State v. Hilliard, 89 Wn.2d 430, 440, 573 P.2d 22 (1977) (citing Taylor v. Louisiana, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975); Smith v. Texas, 311 U.S. 128, 61 S. Ct. 164, 85 L. Ed. 84 (1940)). The defendant bears the burden of establishing that the jury selection process—in this context, meaning how the court selects potential jurors from the community—is constitutionally invalid. Hilliard, 89 Wn.2d at 440.

4

To demonstrate that a jury is not a fair cross-section of the community in violation of the federal constitution, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.

State v. Cienfuegos, 144 Wn.2d 222, 232, 25 P.3d 1011 (2001) (quoting Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979)).  A mere showing of underrepresentation is insufficient to establish that the representation is not "fair and reasonable."  In re Pers. Restraint of Yates, 177 Wn.2d 1, 20–21, 296 P.3d 872 (2013).  And a showing of underrepresentation does not establish systematic exclusion of the group in the jury selection process.  Duren, 439 U.S. at 366, 99 S. Ct. 664.  To show systematic exclusion, the defendant must establish that the underrepresentation is inherent in the jury selection process used, as by showing that venires, over time, are continually under representative.  See id. (concluding that the defendant established women's underrepresentation where he showed they were underrepresented in every weekly venire for over a year).

The parties do not dispute that African Americans are a distinctive group in King County.  But even assuming unfair and unreasonable representation of African Americans, Abbott has not established that any disparity flows from

5

systematic exclusion.[1] He claims that "the disparity between the black population of King County and the number of black jurors in the pool speaks for itself in establishing systematic exclusion." But again, underrepresentation on its own does not establish systematic exclusion of the group in the jury selection process. Duren, 439 U.S. at 366, 99 S. Ct. 664.[2] To demonstrate systematic exclusion, the claimant must show that the underrepresentation inheres in the jury selection process, and Abbott does not attempt to do so. See Duren, 439 U.S. at 366, 99 S. Ct. 664. Because Abbott has not established this element, his fair cross-section claim fails.

Abbott also claims that the composition of his jury violated Washington law. But no law he cites establishes a separate state law standard for fair-cross section claims. Abbott cites GR 37, which seeks to prevent use of peremptory challenges to exclude potential jurors based on their race or ethnicity; but he does not claim error in the State's use of peremptory challenges. Abbott also cites State v. Berhe, 193 Wn.2d 647, 444 P.3d 1172 (2019), which addresses allegations that a juror's racial bias affected the verdict; but he does not allege the jurors who served on his jury held racial bias. These authorities do not

---

[1] Abbott also says that courts have "moved away" from the inquiry of whether systematic exclusion has occurred. But no law establishes that he need not show systematic exclusion in the context of a fair cross-section claim.

[2] See also State v. Lopez-Ramirez, noted at 2 Wn. App. 2d 1032, 2018 WL 827172 at *6 ("A mere showing of underrepresentation does not establish systematic exclusion of the group in the jury selection process."); State v. Suarez, noted at 143 Wn. App. 1020, 2008 WL 501927 at *1–2 (rejecting systemic exclusion claim where claimant offered no evidence besides underrepresentation); State v. Sherman, noted at 166 Wn. App. 1039, 2012 WL 629434 at *5 (same); but see GR 14.1 ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.")

establish that a separate state constitutional standard exists for fair cross-section claims. And as noted by the State, Abbott does not argue for a separate state constitutional standard under State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986). See, e.g., State v. Brown, 132 Wn.2d 529, 594, 940 P.2d 546 (1997) ("Whether the Washington Constitution should be independently analyzed as granting more protection than the federal constitution is determined by examining six nonexclusive factors set forth in State v. Gunwall.").[3]

B. Counsel's Performance

Abbott says that his counsel performed ineffectively with respect to the $60,000 settlement. He says that defense counsel should have investigated whether Abbott was a named party in the suit. He also says that upon learning that Abbott was a named party, counsel should have either moved to exclude the settlement evidence or introduced evidence showing that Abbott did not pay the settlement. The State counters that Abbott's trial counsel pursued a reasonable but unsuccessful strategy. We conclude that Abbott has not shown his trial counsel's performance fell below an objective standard of reasonableness.

We presume effective representation, and the defendant bears the burden of showing ineffective assistance. State v. Chavez, 162 Wn. App. 431, 437–38,

---

[3] Abbott cites State v. Saintcalle for the proposition that a Gunwall analysis is unnecessary here. 178 Wn.2d 34, 51, 309 P.3d 623 (2013), abrogated by City of Seattle v. Erickson, 188 Wn.2d 721, 398 P.3d 1112 (2017). In Saintcalle, our Supreme Court stated that it had the ability to expand Batson (Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)) protections beyond a federal minimum but chose not to do so. 188 Wn.2d at 51–55. Saintcalle does not stand for the proposition that state courts may expand state constitutional rights beyond a federal minimum without first conducting a Gunwall analysis.

257 P.3d 1114 (2011). To prevail on such a claim, a defendant must show their "lawyer's representation fell 'below an objective standard of reasonableness' and the 'deficient representation prejudiced the defendant.'" Id. at 438 (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). We will not conclude that trial counsel performed ineffectively if "the actions of counsel complained of go to the theory of the case or to trial tactics." In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 141, 385 P.3d 135 (2016) (quoting State v. Garrett, 124 Wn.2d 504, 520, 881 P.2d 185 (1994)). But where the claimant shows that no conceivably legitimate tactic explains counsel's performance, they may overcome the presumption that counsel performed effectively. Caldellis, 187 Wn.2d at 141.

Abbott claims his trial counsel failed to investigate whether he was a named party in the lawsuit from which the settlement arose, and that this failure constituted ineffective assistance. He also claims the failure to move to exclude the evidence after this discovery constituted ineffective assistance. We disagree.

A failure to investigate may constitute ineffective assistance of counsel. State v. Ray, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991). But Abbott's argument fails because, before trial, defense counsel discovered that Abbott was a party to the lawsuit. And despite this knowledge, defense counsel continued to pursue his conceivably legitimate strategy of portraying the victim as having a financial motive for her allegations. Thus, we conclude that Abbott has not established deficient representation under this theory.

Abbott also claims his trial counsel performed ineffectively by failing to introduce evidence that he did not contribute to the settlement. But the trial court warned Abbott's trial counsel that he risked opening the door to additional prejudicial evidence if he asked the victim about the settlement on cross-examination:

> I'm assuming that if the [victim] could answer [whether Abbott was served and paid the settlement], that will be fine with this Court, with me. And—and to the extent that she knows—she may not know whether he was served or he paid any portion of it. But I think those are fair questions.
>
> But if you ask [the victim] why did you file a lawsuit and she starts talking about other complaints that—that may have been alleged against [Abbott], I think you have to watch out for that. And I can't stop her from talking about that. . . . So it's up to you what questions to ask. And when she starts talking about it, I mean I think you are opening your own door that you can't argue prejudice based on that.

The State also indicated that asking further questions about the settlement might open the door to prejudicial information. It asserted that the civil complaint stated that others had made complaints about Abbott's conduct and that her complaint alleged negligence against the employer, presumably for their treatment of those complaints. And indeed, introducing evidence that Abbott did not contribute to the settlement would risk opening the door to prejudicial information, such as why the victim would accept such a resolution of the civil matter. Given the trial court's warning, defense counsel had a conceivably legitimate purpose in deciding not to introduce evidence about who paid the settlement amount.

Nor did defense counsel perform deficiently by pursuing the financial motivation theory even though doing so yielded the testimony about Abbott being

a party to the lawsuit. When the parties discussed this issue before trial, the State did not indicate that it would ask who the victim sued. Only once the State elicited such testimony did the potential need to distance Abbott from the settlement arise. Also, the jury was never told whether Abbott was a party to the settlement agreement, or contributed to the settlement, and the jury instructions told them to apply the law to the facts in evidence.

Because Abbott has not shown his trial counsel performed unreasonably with respect to the settlement evidence, we need not reach the question of prejudice.[4]

C. State's Rebuttal Argument

During the State's rebuttal at closing argument, it stated:

[I]f you believe her when she says he touched my vagina, if you believe her when she says he asked me, do you feel violated, if you believe her when she says that he told her it was just an accident— it was not an accident, if you believe her, that is testimonial evidence and that is enough [to convict Abbott].

*That is different than might. That is different than maybe. That is I believe her. This happened, and that is an abiding belief. And an abiding belief is beyond a reasonable doubt.*

(Emphasis added.) Abbott says that in making this argument, the State misrepresented its burden of proof, thereby committing prosecutorial misconduct. In the alternative, he says that any failure by his trial counsel to object to the

---

[4] To show prejudice, a claimant must show the result below would have been different but for the deficient representation. Chavez, 162 Wn. App. at 438. Here, other evidence corroborated the victim's claims, including her testimony about Abbott's assaulting her, and her prompt disclosures to a friend, her fiancé, her manager, and police.

claimed prosecutorial misconduct constituted ineffective assistance of counsel. We disagree.

To show prosecutorial misconduct, "the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). The defendant must prove "there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict." Thorgerson, 172 Wn.2d at 442–43 (alteration in original) (quoting Magers, 164 Wn.2d at 191). "The 'failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" Thorgerson, 172 Wn.2d at 443 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). Defense counsel's failure to object to allegedly improper remarks made by a prosecutor "*strongly suggests* to a court that the argument or event in question did not appear critically prejudicial to [the defendant] in the context of the trial." State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

Abbott says that the State's comments transformed its burden of proof beyond a reasonable doubt to a burden of the preponderance of the evidence—

that if the jury believed the victim, it could properly convict him. Abbott did not object to the State's remarks at trial.

"Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). But no law cited by Abbott shows that this comment was improper or misstated the State's burden. He cites Lindsay, in which our Supreme Court held it was improper for the State to tell the jury to "speak the truth." Id. at 437. And he cites State v. Berube and State v. Emery, in which we and our Supreme Court held the same, respectively. 171 Wn. App. 103, 120–21, 286 P.3d 402 (2012); 174 Wn.2d 741, 760, 278 P.3d 653 (2012). His attempt to equate "speak the truth" with an argument telling the jury that they could find proof beyond a reasonable doubt based on testimonial evidence is unavailing. And RCW 9A.44.020(1) establishes that a jury may base its verdict solely upon an alleged victim's uncorroborated testimonial evidence in an indecent liberties case. See also State v. Johnson, 9 Wn. App. 766, 768, 514 P.2d 1073 (1973).

Even if the comment were improper, we would not conclude that it prejudiced Abbott. We note that Abbott's trial counsel did not object to the claimed misconduct at trial, which strongly suggests that the defense did not view the comment to be critically prejudicial. This court has recognized that a misstatement of the burden of proof may constitute flagrant and ill-intentioned

misconduct.  See, e.g., State v. Johnson, 158 Wn. App. 677, 685-86, 243 P.3d 936 (2010).  But here, the State did not misstate its burden of proof.

Abbott also says that his trial counsel's failure to object to the statements comprising the claimed misconduct constituted ineffective assistance of counsel. "If a prosecutor's remark is improper and prejudicial, failure to object may be deficient performance."  In re Pers. Restraint of Cross, 180 Wn.2d 664, 721, 327 P.3d 660 (2014), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018).  But because the State's remarks were not improper, Abbott's ineffective assistance of counsel claim fails.

We affirm.

Chun, J.

WE CONCUR:

Brennan, J.     Verellen, J.