[No. 28928-1-III.   Division Three.   June 30, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. JAVIER CHAVEZ, JR., *Appellant*.

432

*David L. Donnan* and *Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Andrew K. Miller, Prosecuting Attorney,* and *Anita I. Petra* and *Christine Bennett, Deputies,* for respondent.

¶1 SWEENEY, J. — This appeal follows the trial court's refusal to allow the defendant to withdraw a plea of guilty. His lawyer asked and was permitted to withdraw based on a potential conflict of interest. Substitute counsel then filed what he explicitly characterized as an "*Anders* brief"[1] and strongly suggested that his client's position was frivolous. Substitute counsel did not develop any potential claim of conflict following the withdrawal of the original lawyer. We conclude that this was ineffective assistance of counsel and remand for further proceedings on the defendant's motion to withdraw his plea of guilty.

## FACTS

¶2 The State charged Javier Chavez Jr. with first degree assault by domestic violence and unlawful possession of a firearm, on September 18, 2009. Mr. Chavez was held in the Benton County Jail on these charges. The court ordered Mr. Chavez not to contact his wife. She was a witness to the events that generated the charges. Mr. Chavez, nonetheless, called his wife four times from the jail. The State then amended the charging documents to include violations of the no-contact order and witness tampering.

¶3 Mr. Chavez was represented by attorney Larry Zeigler. Mr. Zeigler talked to Ms. Chavez and apparently told her that she was not required to appear in court unless she was properly served with a subpoena, and he apparently told her that hanging around the courthouse was not helping her husband. Mr. Chavez told his wife during one of his calls from jail to "[l]ay low. Don't go out. You know, avoid being served." Report of Proceedings (RP) at 13. The jail recorded the conversation.

¶4 In pretrial proceedings, the lawyers expressed concern over a potential conflict of interest should Mr. Ziegler represent Mr. Chavez on the witness tampering count, based on some of the conversations between Mr. Chavez and

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

his wife in which Ms. Chavez stated that it was Mr. Ziegler who had told her to "lay low." RP at 104. Mr. Ziegler acknowledged that the tapes contained another statement by Ms. Chavez that Mr. Ziegler told her, "You need to get out of here before somebody sees you." RP at 107. Mr. Ziegler assured the trial court that Ms. Chavez misunderstood him. The prosecutor agreed that it was probably a misunderstanding. Mr. Ziegler, nonetheless, shared the prosecutor's belief that there was a conflict. The prosecutor expressed concern that with Mr. Ziegler as a purported accomplice to the witness tampering claim, any plea bargain negotiated with Mr. Chavez would be vulnerable to later challenge on the basis of conflict of interest. The court initially took the withdrawal issue under advisement until it had more information on what testimony would be provided by Ms. Chavez who, while subject to an outstanding material witness warrant, had not been located.

¶5 On the day set for commencement of the trial, the prosecutor reported that Ms. Chavez had neither appeared nor been located. At that point, the trial court agreed that Mr. Ziegler could withdraw from representing Mr. Chavez on the witness tampering count. It severed that charge from the other charges. And it continued that matter for later trial. Next, he granted Mr. Ziegler's motion to dismiss the assault and weapons charges on speedy trial grounds. At that point, Mr. Ziegler requested a short recess to confer with Mr. Chavez. Following the conference with his client, Mr. Ziegler handed up a statement of defendant on plea of guilty. The court went through the standard protocol for a guilty plea. A few days later, the court appointed Salvador Mendoza Jr. to represent Mr. Chavez on the witness tampering charge.

¶6 After the plea but before sentencing, Mr. Chavez wanted to withdraw his plea of guilty. On the date set for sentencing, Mr. Zeigler reported to the judge that he had now filed a motion to withdraw from representing Mr. Chavez on the four counts of violation of the no-contact order. When asked about the basis for this withdrawal, he stated:

I received a call from the alleged victim in this case after we had tendered these pleas. Without going into the contents of the conversation, I'm simply at a point—I think you may remember just exactly where I was in this case when we first started it. I really—I'm going to be—I'm probably going to end up as a witness in this case, is what's going to happen, . . .

and

[h]e wants to withdraw the plea. I just don't feel comfortable ethically arguing a Motion to Withdraw based on all my discussions with the defendant and with the defendant's wife and with the defendant's mother. There's just too much on the plate here for me to handle all at once.

RP at 126. The court agreed; allowed Mr. Zeigler to withdraw; continued sentencing and hearing on the motion to withdraw the plea; and appointed Mr. Mendoza, the attorney who represented Mr. Chavez on the witness tampering charges, to represent him on his motion to withdraw the plea on the four counts of violation of the no-contact order.

¶7 Mr. Mendoza thereafter filed what was styled in the caption as a "Motion to Withdraw Guilty Plea" and at the bottom of each page as "Defendant's Anders Brief." He characterized the motion as Mr. Chavez's alone and without merit, and submitted "for consideration of possible errors made by his attorney pursuant to *Anders v. California.*" Clerk's Papers (CP) at 36-37. Mr. Mendoza represented that he had reviewed the "police reports, statutes, and case law" and could not "find any assignment of error that would support a meritorious challenge to the entry of the guilty plea." CP at 36. At the hearing on the motion to withdraw the guilty plea, counsel again referred to the motion as "really in the sense of an *Anders* brief." RP at 132. The court denied the motion to withdraw the guilty plea and sentenced Mr. Chavez to 60 months of confinement.

¶8 Ten days later, attorney William McCool filed a "Motion and Declaration for Reconsideration" on Mr. Chavez's behalf. CP at 65-67. This record does not show why Mr. McCool became involved since Mr. Mendoza had not with-

drawn. Mr. Chavez's declaration supported the motion and stated that at the time the no-contact order was entered Mr. Chavez was under the influence of drugs and did not understand the order's contents. Mr. Chavez also states he did not receive a copy of the order until January 2010, after his calls from the jail were made.

¶9 A day later, Mr. Mendoza filed a "Motion and Memorandum to Dismiss"; he alleged that the jail's confiscation of Mr. Chavez's legal papers constituted a due process violation requiring dismissal of the charges against him. There is nothing in the record indicating whether the trial court ruled on either the motion for reconsideration or the motion to dismiss.

## DISCUSSION

¶10 Mr. Chavez contends that he was denied the right to counsel or, at least, effective assistance of counsel because his first lawyer had an apparent conflict of interest that made it impossible to give objective advice on whether or not to plead guilty. Indeed, his original lawyer asked to withdraw because of concerns over a conflict. And Mr. Chavez contends that attorney Mendoza essentially abandoned him during proceedings subsequent to the plea by filing an *Anders* brief, despite the fact that there simply is no such procedure in a trial court because *Anders* briefs are strictly an appellate procedure.

¶11 The State responds that this record is devoid of any showing that attorney Zeigler had a conflict or even if he did have a conflict that it influenced any advice he gave Mr. Chavez prior to his plea of guilty. And the State responds that attorney Mendoza continued to represent Mr. Chavez throughout the postplea proceedings; that is, he did not withdraw in keeping with the usual *Anders* procedure.

¶12 We review a claim of ineffective assistance of counsel de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). We begin with a strong presumption of effective representation. *State v. McFarland*, 127 Wn.2d

322, 335, 899 P.2d 1251 (1995). So the burden is on the defendant to show he was not effectively represented. *Id.* The conflict of interest was not raised by Mr. Chavez below as the basis for the motion to withdraw the plea. But the parties agreed at oral argument that a conflict of interest on the part of defense counsel that constitutes ineffective assistance is an issue that can be raised for the first time on appeal.

¶13 Mr. Chavez must show that his lawyer's representation fell "below an objective standard of reasonableness" and the "deficient representation prejudiced the defendant," meaning the result in the superior court would have been different but for counsel's ineffective representation. *Id.* at 334-35. A conflict of interest may amount to ineffective assistance of counsel where it adversely affects a client's interests. *State v. Regan,* 143 Wn. App. 419, 426, 177 P.3d 783 (2008).

¶14 There are a couple of situations in which a lawyer's conflict of interest may require reversal without a showing of actual prejudice—either an actual conflict adversely affecting his lawyer's performance or a situation in which the court should know of a particular conflict but then fails to inquire. *White,* 80 Wn. App. at 411.

¶15 Here, the court was faced with representations by the lawyer who actually represented Mr. Chavez that the lawyer was concerned about a conflict of interest, an ethical conflict, and that the lawyer wanted to withdraw from further representation based on that concern. The court permitted Mr. Ziegler to withdraw but then did not inquire further; nor did Mr. Mendoza develop a factual basis for the court to pass on any potential conflict. While there had been an earlier discussion by the prosecutor and Mr. Ziegler of the reasons he wished to withdraw from representing Mr. Chavez on the witness tampering count, there is little information and no fact finding on why Mr. Ziegler concluded he had a conflict representing Mr. Chavez on the withdrawal of the plea. The State argues there is no evidence in the record to support any conflict of interest.

The State is correct and that is, at least, part of the problem here. All we do know is that in representing that he had a conflict, Mr. Ziegler, as defense counsel, was "in the best position to determine when a [disabling] conflict exists." *Mickens v. Taylor*, 535 U.S. 162, 167, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) (describing the rationale of the automatic reversal rule of *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), applied where trial court refuses, without inquiry, to accept defense counsel's representation of a conflict).

¶16 Mr. Chavez's motion to withdraw his plea was a critical stage of these proceedings and no one contends otherwise. *State v. Davis*, 125 Wn. App. 59, 63-64, 104 P.3d 11 (2004) (CrR 4.2(f) presentence motion to withdraw a guilty plea is a critical stage of a criminal proceeding for which a defendant has a constitutional right to be represented by counsel.). He was therefore entitled to representation. Yet substitute counsel said he could not find any assignment of error that would support a meritorious challenge and then went on to lay out Mr. Chavez's objections in a way that clearly distanced counsel from his client and suggested, at least as we read it, that his client's position was frivolous. Counsel concluded by submitting "this motion to the court for consideration of possible errors made by his attorney pursuant to *Anders v. California*." CP at 37. Ultimately, we conclude that Mr. Chavez was not represented. Denial of counsel during a critical stage of the proceedings is presumptively prejudicial. *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

¶17 A so-called *Anders* brief is an appellate procedure that is not appropriate for a trial court. Mr. Chavez represented in his opening brief that a search of published cases from all 50 states and the federal circuit courts reveals no case in which an *Anders* brief was filed at trial, Br. of Appellant at 15; the State has identified no such case in response, nor have we located one. The *Anders* procedure covers the appellate situation where an attorney feels an

entire appeal is without merit and therefore wants to withdraw. *See Anders*, 386 U.S. at 744; *State v. Theobald*, 78 Wn.2d 184, 185, 470 P.2d 188 (1970). Applying this procedure to a discrete issue in a trial court is a misapplication, no matter how an attorney characterizes the motion. A criminal defense lawyer may decline to assert an issue that he or she considers frivolous. RPC 3.1. However, in light of the constitutional right of a criminal defendant to assistance of counsel, he or she may assert issues that would otherwise be prohibited under professional rules of conduct. RPC 3.1 cmt. 3. But here we have more than that. We conclude this was ineffective assistance. And, just as significantly, the concern raised here on appeal was over a suggested conflict of interest, which, of course, was not developed at all in the trial court.

¶18 We review the court's refusal to allow a defendant to withdraw a guilty plea for abuse of discretion. *State v. Olmsted*, 70 Wn.2d 116, 118, 422 P.2d 312 (1966). We are unable to say one way or the other whether the judge here abused his discretion because there is no record on the essential complaint, the essential grounds, that counsel had a conflict of interest.

¶19 Unlike a court of review, the trial judge here was not required to develop Mr. Chavez's arguments. The attorney originally representing Mr. Chavez was concerned that he had a conflict and asked to withdraw but was required, nonetheless, to represent Mr. Chavez on his guilty plea. The lawyer who substituted filed what he styled as an *"Anders* brief," a procedure permitted on appeal but with no precedent or other authority for use in the trial court. The combination raises enough concern here in this court of review to warrant a second look at the motion to withdraw this guilty plea.

¶20 We therefore reverse and remand for further proceedings on Mr. Chavez's motion to withdraw his plea.

SIDDOWAY, J., concurs.

¶21 KORSMO, A.C.J. (dissenting) — This appeal should present two issues. First, did Javier Chavez Jr. present his argument for withdrawing his guilty plea to the trial court? The answer is yes, he did. Second, did the trial court correctly determine that no manifest necessity existed for withdrawing the guilty plea? Again, the answer is yes. Accordingly, the judgment should be affirmed.

## DISCUSSION

¶22 Unfortunately, the majority gets sidetracked by a third issue that cannot be resolved on this record and then uses that issue to bootstrap error into the other issues. The third issue is the contention that Larry Ziegler had a conflict of interest that impacted the guilty plea. We do not have a sufficient factual record to determine that issue. Moreover, the majority mistakenly applies an outmoded analysis that has been rejected by both the United States Supreme Court and the Washington Supreme Court in its review of the issue. The basic problem is that the majority combines a claim that attorney Ziegler had a conflict with the separate argument that attorney Salvador Mendoza Jr. performed ineffectively in presenting his client's motion. I will address the two problems separately.

### Conflict of Interest

¶23 Stepping onto the sidetrack first, we must look at whether Mr. Chavez can bring his Sixth Amendment conflict of interest claim initially in this appeal. RAP 2.5(a)(3). As a general rule, Washington appellate courts will not consider an argument that was not first presented to the trial court. RAP 2.5(a). One exception to that rule is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). However, an alleged error is not manifest if there are insufficient facts in the record to evaluate the contention. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

¶24 Whether there is a sufficient record for us to review is dependent upon what one needs to show to establish a

conflict of interest that infringes upon the Sixth Amendment guaranty of effective counsel. Washington once read controlling United States Supreme Court precedent to mean that there were two circumstances in which a conflict of interest violated the Sixth Amendment: (1) counsel acted under an actual conflict of interest that adversely affected counsel's performance or (2) there was an apparent conflict of interest and the trial court failed to inquire into the possible conflict. *In re Pers. Restraint of Richardson*, 100 Wn.2d 669, 677, 675 P.2d 209 (1983), *abrogated by State v. Dhaliwal*, 150 Wn.2d 559, 79 P.3d 432 (2003).[2] The United States Supreme Court subsequently clarified that only an actual conflict of interest that adversely affected counsel's performance violates the Sixth Amendment. *Mickens v. Taylor*, 535 U.S. 162, 152 L. Ed. 2d 291, 122 S. Ct. 1237 (2002). Washington recognized that rule, and the abrogation of the second *Richardson* test, in *Dhaliwal*, 150 Wn.2d at 568-571. "We agree that under *Mickens* reversal is not mandated when a trial court knows of a potential conflict but fails to inquire." *Id.* at 571.

¶25 Properly viewed, the question here then is whether Mr. Chavez has shown both that Mr. Ziegler had an actual conflict of interest *and* that it did adversely affect his performance. This record does not show an actual conflict of interest. Mr. Chavez speculates that Mr. Ziegler may have feared prosecution and, hence, tried to save himself by convincing his client to plead guilty. However, speculation is not fact. We have no information about whether Mr. Ziegler actually feared he might be prosecuted. We have no information about what advice Mr. Ziegler gave Mr. Chavez. We have no information about what motivated Mr. Ziegler to advise Mr. Chavez to plead guilty, *if he even did so*. For all we know, Mr. Chavez decided to plead guilty against Mr. Ziegler's advice. In other words, even if there were a conflict

---

[2] *State v. White*, 80 Wn. App. 406, 907 P.2d 310 (1995), *review denied*, 129 Wn.2d 1012 (1996), cited by the majority, simply involved review of a claim presented under the then-prevailing *Richardson* standard. To the extent that it can be read as supporting two different tests for conflict of interest, it has been superseded.

of interest, we also do not know that it adversely affected the guilty plea decision. Because we lack any information necessary to adjudge the claim that there was an actual conflict of interest, there is no manifest error permitting review in this proceeding. *McFarland*, 127 Wn.2d at 333.

¶26 The majority agrees that Mr. Chavez has not shown that a conflict of interest exists. Majority at 438-39. That should result in either outright rejection of the claim due to failure to establish manifest constitutional error, RAP 2.5(a)(3), or we should recognize that Mr. Chavez *might* have an argument if he develops the facts and, thus, decline to consider the issue. His remedy then would be to file a personal restraint petition. *E.g.*, *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159, *review denied*, 117 Wn.2d 1018 (1991). Instead, the majority follows a third path that I think is not well taken. I know of no authority that resolves the prejudice prong of the ineffective assistance of counsel analysis, discussed *infra*, by looking to the possible failures of a different attorney than the one who allegedly erred.

¶27 Appellate courts do no favors to criminal defendants when they consider and reject arguments on appeal when the facts are insufficiently developed. An adverse ruling on appeal has nearly preclusive effect on a subsequent attempt to relitigate the issue in a personal restraint petition. *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986). It is fairer to the defendant to decline to consider a claim where the facts are not well developed. That is the course I would follow here.

¶28 If we must address the conflict issue, I agree with the majority that Mr. Chavez did not show that a conflict existed. Mr. Chavez apparently agrees because he never alleged that the guilty plea should be withdrawn because of a conflict of interest. The same can be said for Mr. Ziegler, who never contended he had a conflict of interest on the no-contact order violation counts until Mr. Chavez alleged

that Mr. Ziegler had not fully advised him.[3] Mr. Mendoza never claimed there was a conflict of interest. Attorney William McCool never claimed there was a conflict of interest. Indeed, the trial court never *sua sponte* suggested the possibility. In short, it appears that there is near unanimity on the topic.

¶29 Ordinarily, the failure of an appellant to establish error precludes relief. The majority has not suggested why a new course of action is appropriate (or even possible) in this case.

¶30 The conflict of interest argument does not entitle Mr. Chavez to relief in this proceeding.

### Ineffective Assistance

¶31 The other issue presented is whether Mr. Mendoza rendered ineffective assistance when he filed his client's desired motion and called it an *"Anders"*[4] type of pleading. Mr. Chavez has not shown that Mr. Mendoza erred or that he was harmed by the filing.

¶32 Long-settled precedent addresses appellate review of Sixth Amendment ineffective assistance of counsel claims. An attorney must perform to the standards of the profession; the failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *McFarland*, 127 Wn.2d at 334-335. In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Thus, to prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived

---

[3] There is no mystery here. Once the claim was raised, Mr. Ziegler realized he now could be a witness against his client on the no-contact order violation charges since the nature of his advice was in question. An attorney cannot be both advocate and witness. RPC 3.7(a).

[4] *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967).

him of a fair trial. *Id.* at 690-692. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

¶33 The majority correctly cites to the fact that no one has produced any authority in which an appellate court has had to consider an *Anders* brief that had been filed in the trial court. From that undisputed premise, the majority then concludes that Mr. Mendoza erred in filing one here. That conclusion does not follow from the premise. Typically one shows that counsel erred by establishing he or she failed to follow precedent or otherwise did something that previously has been adjudged to be erroneous. Here, Mr. Chavez argues that because such briefs are typically filed in appeals, it must be error to do so in the trial court. I think the opposite conclusion must be drawn. It is Mr. Chavez's burden to prove that Mr. Mendoza erred in filing this type of pleading. The simple fact is that no trial attorney has before been faulted in the appellate courts for filing such a pleading. The absence of any precedent on this point strongly suggests there was no error at all.

¶34 Mr. Chavez argues that counsel's actions amounted to a failure to act on his client's behalf, resulting in a complete denial of counsel at a critical stage of the proceedings. This certainly overstates the fact of the matter since Mr. Mendoza did present the arguments to the court. More critically, the argument is implicitly founded upon two propositions that do not support it.

¶35 The first implicit proposition is that while an attorney who files an appellate brief identifying issues that could be raised but lack merit is not ineffective (even though, unlike here, counsel then seeks to withdraw from further representation), a trial attorney who shows similar candor to the tribunal is ineffective (even though not seeking to withdraw). The right to counsel on appeal,

although based on the Fourteenth[5] Amendment instead of the Sixth Amendment, to my knowledge has not been interpreted as encompassing a lesser duty of representation than that at trial. That seems to be what Mr. Chavez's argument suggests; otherwise, there is no basis for finding that a trial attorney errs by filing an *Anders* brief while an appellate attorney does not err.

¶36 The second implicit proposition is derived from RPC 3.1 cmt. 3, which recognizes that counsel for a criminal defendant can present an otherwise meritless (or frivolous) argument on behalf of the client without running afoul of the ethical rules. The proposition seems to be that because an attorney can file a frivolous claim on behalf of a criminal defendant, the attorney must do so upon request. While the ethical question of what arguments an attorney *must* make for a criminal defendant is fascinating, it is beyond the scope of this case. The question here is whether an attorney must put his or her personal imprimatur on argument filed at the client's request. No authority has been presented that requires counsel to personally endorse an argument. Accordingly, an attorney who presents an argument along the lines of "my client wants to argue" or "this is in the nature of an *Anders* brief" does not necessarily err.

¶37 Mr. Chavez has not established that Mr. Mendoza erred by filing the pleading. On that basis alone the ineffective assistance claim should be rejected. *Strickland*, 466 U.S. at 697; *Foster*, 140 Wn.2d at 273.

¶38 There also is the question of prejudice. In other words, how was Mr. Chavez harmed by the *Anders*-type brief filed in the trial court? He wanted to argue that his guilty pleas should be withdrawn because he did not understand the relevant case law and he did not have the order in hand at the time he violated it. An experienced criminal practitioner looked into the topic and could find no other grounds for withdrawal, so he filed his client's arguments. The judge looked at the arguments and decided they

---

[5] *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963).

did not merit relief under our court rules. There simply was no prejudice here. Mr. Chavez got his arguments in front of the trial court. They were without merit. No amount of sincere argument from his counsel would have changed that fact.

¶39 No one disputes that Mr. Mendoza and the trial judge both correctly assessed the merits of the claim. Mr. McCool did not present those arguments in his reconsideration motion. Mr. Chavez does not argue them on appeal. The majority does not seek to defend them. Instead, the prejudice seems to be that Mr. Ziegler's possible conflict of interest went unargued, so there must be prejudice. The prejudice from whatever stylistic error Mr. Mendoza may have committed in presenting his client's motion simply is not measured by whether another attorney might have done something wrong.

¶40 Mr. Chavez established neither error nor prejudice from the pleading in question. He needed to establish both. His claim of ineffective assistance failed.

*Withdrawal Motion*

¶41 The true issues in this appeal involve the motion to withdraw the guilty plea. The law governing guilty plea challenges is also well settled. CrR 4.2(f) permits a guilty plea to be withdrawn whenever "necessary to correct a manifest injustice." The appropriate standard for applying this rule was set out in *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974), as follows:

> Under CrR 4.2(f), adopted by this court, the trial court shall allow a defendant to withdraw his plea of guilty whenever it appears that withdrawal is (1) *necessary* to correct a (2) *manifest injustice*, *i.e.*, an injustice that is obvious, directly observable, overt, not obscure. *Webster's Third New International Dictionary* (1966). Without question, this imposes upon the defendant a demanding standard.

The written statement form itself is sufficient to establish that the plea was voluntary. *State v. Lujan*, 38 Wn. App. 735, 688 P.2d 548 (1984), *review denied*, 103 Wn.2d 1014 (1985).

¶42 A trial court's ruling on a motion to withdraw a guilty plea is reviewed for abuse of discretion. *State v. Olmsted*, 70 Wn.2d 116, 118, 422 P.2d 312 (1966). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶43 The trial court did consider Mr. Chavez's claims, forwarded by Mr. Mendoza, that his plea was invalid due to insufficient information and a concern that the law did not apply to him. The trial court ruled upon the motion, and this appeal followed. The remaining question should then be whether the trial court abused its discretion in denying the motion. There can be only one answer on that point since no one argues that the trial court reached the wrong conclusion. There was no abuse of discretion in denying the motion to withdraw.

¶44 It makes no sense to reverse the trial court for not deciding an issue that has not been, and perhaps may never be, presented to it. The appropriate course of action would be to affirm the trial court and leave Mr. Chavez's fourth argument for withdrawing his guilty plea to the personal restraint petition process. Since the majority decides otherwise, I respectfully dissent.