IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 68495-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PHILLIP LINCH SCHLOREDT, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 30, 2013 |

SCHINDLER, J. — When a court allows a defendant represented by counsel to file a motion pro se, no waiver of the right to counsel is necessary so long as the defendant does not assume core functions of counsel or has the assistance of experienced legal counsel. In this case, Phillip Linch Schloredt had the assistance of counsel and did not assume counsel's core functions when he filed his pro se motions for a new trial and arrest of judgment. In addition, Schloredt ultimately waived his right to counsel. We therefore reject his argument that he was denied the right to counsel. We also reject the other arguments Schloredt makes in his statement of additional grounds, and affirm.

FACTS

The State charged Phillip Linch Schloredt with second degree burglary of a tire shop in Edmonds on April 8, 2011. Prior to trial, Schloredt moved to exclude any reference to needles found in a bag in his truck. The court granted the motion and directed the State to "carefully instruct" its witnesses to not refer to the needles.

At trial, Jerral Sidles testified that on the morning of April 8, 2011, she saw a "silhouette" on the other side of a fence separating her apartment complex from the Factory Direct Tires store on Highway 99.

Beverly Ellingworth lived in the same apartment complex. Ellingworth testified that she saw Schloredt that morning throwing tires into a creek bed near the fence. When she confronted him, Schloredt said he was just getting tires out of the water. Ellingworth asked Schloredt if he worked for the tire store and he said, "No. I sell them tires."

Ellingworth noticed a black pickup truck nearby with the tailgate down and a number of tires in the bed. Ellingworth told Schloredt to stay put and started to walk back to her apartment to call police. When she heard the truck start, Ellingworth told Schloredt that he could not leave until he pulled all the tires out of the creek. Schloredt removed the tires from the creek. After filling the back of his truck with the tires and putting several on the hood, Schloredt left. Ellingworth then called the police.

Joseph Burch, the manager at Factory Direct Tires, testified that he saw Schloredt's truck that morning loaded with tires. When Burch called to him, Schloredt drove up and told Burch, "[T]he lady said I can have these." Burch told him that was not true. Schloredt responded, "It's not illegal, what I'm doing. Don't call the cops." Schloredt drove off and Burch called the police.

Burch testified that the tires in the store's fenced yard were stacked at closing time on April 7, 2011. On April 8, however, there were tires lying on the ground and the fence had sustained damage that was not present the day before. Burch did not give Schloredt permission to take the tires. Burch testified that he positively identified

2

Schloredt as the person he had seen driving away with the tires, and confirmed that the tires in the truck had come from his store.

Officer Stephen Morrison of the Edmonds Police Department testified that he responded to the report of a tire store burglary and stopped Schloredt's truck. When Officer Morrison told Schloredt why he stopped him, Schloredt said he found the tires in a creek bed next to a tire store in Edmonds. Schloredt denied going onto the property of the tire store. Schloredt said he would have taken more valuable tires if he had gone into the fenced area.

Officer Alan Hardwick of the Edmonds Police Department also responded to the burglary report. Officer Hardwick noticed that Schloredt's coat was wet and that he seemed "unstable." Officer Hardwick said he asked about the contents of a bag in the back of the truck and Schloredt said, " '[T]here might be some needles.' " On cross-examination, defense counsel asked Officer Hardwick if he had an opinion as to whether Schloredt was under the influence of drugs. When Officer Hardwick said he had an opinion, defense counsel asked what that opinion was. Officer Hardwick then explained that he wondered whether Schloredt was under the influence, especially "when he said something about needles in the bag." When asked if he was speculating, Officer Hardwick said,

> No. . . . It was based on some observations: The way that he spoke, the way that he walked, his nervousness. But all those things together and then the comment about the needles made me wonder maybe he's used heroin.

The jury convicted Schloredt as charged of second degree burglary. After trial, Schloredt's counsel withdrew, stating that Schloredt intended to move for a new trial in part on the grounds of ineffective assistance.

A new public defender was assigned to represent Schloredt. Shortly thereafter, Schloredt's new counsel informed him by letter that after researching his proposed motions for arrest of judgment and a new trial, and after discussing the motions with her supervisor, she had decided not to participate in briefing or arguing the motions. The attorney's decision was based in part on the ethical obligation to disclose contrary authority to the court. The attorney encouraged Schloredt to present the motions himself and offered to assist him in filing any pleadings.

On January 13, 2012, defense counsel told the court that she had met with her supervisor and decided that she would not participate in Schloredt's motion but would assist him with research and filing a reply. The attorney also requested a transcript of the fingerprint testimony at trial that Schloredt wanted to review. At the State's request, the court continued the hearing until January 31, 2012.

At the January 31 hearing, defense counsel reiterated that she would not be participating in Schloredt's pro se motion. Schloredt proceeded to present extensive argument on his motion for a new trial. The court denied the motion, noting that the evidence against Schloredt was overwhelming and that any violation of the court's ruling excluding references to the needles was harmless.

On February 27, 2012, Schloredt, with his counsel present, argued his motion for arrest of judgment. Schloredt showed the court the letters from defense counsel explaining why she decided to not participate in briefing or argue the motion for a new trail and the motion for arrest of judgment. Schloredt then told the court,

> I just want it on the record that I never requested to proceed pro se on these issues and since I don't have any representation, that this is a violation of my constitutional rights to knowingly and willingly forfeit my right to representation by a lawyer.

The court asked defense counsel to clarify the situation for the record. Counsel reiterated the reasons set forth in the letters to Schloredt. But counsel told the court that she had responded to Schloredt's request for copies of cases and would be representing him at sentencing.

Schloredt told the court, "I don't believe I'm qualified to represent myself" and asked for an attorney. The court explained to Schloredt that any lawyer would have the same problem. The court gave him the choice of presenting his motions pro se or through current counsel. If he chose the latter, it would be with the understanding that counsel would have a duty to divulge contrary authority to the court. Schloredt opted to proceed pro se. The court then conducted a colloquy concerning waiver of his right to counsel.

Following a continuance, Schloredt presented his motion for arrest of judgment. The court denied the motion.

At sentencing, defense counsel argued for an exceptional sentence below the standard range or, alternatively, a low-end standard-range sentence. After finding that Schloredt had an offender score of 24, the court imposed a mid-range sentence of 60 months.

Schloredt appeals.

### ANALYSIS

Schloredt's principal contention on appeal is that the trial court erred in allowing his post-trial counsel to "withdraw" without first ensuring that he had knowingly, voluntarily, and intelligently waived his right to counsel. This contention fails for several reasons.

5

First, Schloredt's post-trial counsel did not withdraw. Rather, the attorney made a professional judgment not to pursue the issues Schloredt wished to pursue. Contrary to Schloredt's contentions, the attorney was under no obligation to pursue those issues. Defense attorneys in criminal cases retain "wide latitude to control strategy and tactics" and need not pursue any and all arguments the defendant wishes to pursue. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 733, 16 P.3d 1 (2001); State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967). The trial court recognized this point, stating, "I don't know that a lawyer, even if they represent somebody, has the obligation to bring an argument that they don't believe has merit." Schloredt fails to demonstrate any basis for concluding that counsel exceeded the wide latitude afforded her in deciding which arguments to pursue.

Second, no waiver of the right to counsel was necessary in these circumstances. Although Schloredt had no right to present his pro se arguments while represented by counsel, the court, in its discretion, allowed him to do so. State v. Barker, 35 Wn. App. 388, 394, 667 P.2d 108 (1983) (courts have discretion to allow a defendant represented by counsel to present argument). When a defendant represents himself while still represented by counsel—a situation referred to as "hybrid representation"—no waiver of the right to counsel is necessary if the defendant does not assume core functions of counsel or has the active assistance of experienced legal counsel. Barker, 35 Wn. App. at 394-95.

Here, Schloredt did not assume a core function of defense counsel. He did not, for example, make opening or closing statements or cross-examine witnesses— functions at the heart of the trial process which, if performed pro se, expose the

6

defendant to significant risks. Schloredt merely presented post-trial arguments that his counsel decided not to present. Further, Schloredt did not assume or take over counsel's role since counsel researched the issues, discussed them with her supervisor, and decided she could not pursue those arguments. In addition, counsel assisted Schloredt with his motion by providing copies of cases, notes to assist him in preparing his briefing, and information from an investigator regarding his argument that the State did not disclose exculpatory fingerprint evidence. In these circumstances, no waiver was necessary.

Finally, even if a waiver was required, the court conducted a thorough colloquy on the record prior to Schloredt's presentation of his motion for arrest of judgment. Because this motion repeated the arguments asserted in his earlier motion for a new trial, any error in failing to conduct the colloquy prior to the first motion was harmless. Cf. State v. Lackey, 153 Wn. App. 791, 803, 223 P.3d 1215 (2009) (waiver of speedy trial without counsel was harmless where defendant subsequently waived speedy trial with new counsel).

Schloredt also challenges the manner in which his counsel informed the court of her decision regarding his post-trial motions. Schloredt contends counsel "actually became an advocate against her client when she essentially informed the court that she believed his motions were frivolous." In support, Schloredt relies on State v. Chavez, 162 Wn. App. 431, 257 P.3d 1114 (2011).

In Chavez, defense counsel withdrew and the court appointed substitute counsel to represent Chavez on his motion to withdraw his guilty plea. Chavez, 162 Wn. App. at

435-36. At the motion hearing, defense counsel filed an <u>Anders</u>[1] brief, stating that he could not find a basis in law or fact to challenge Chavez's guilty plea. <u>Chavez</u>, 162 Wn. App. at 436. On appeal, Division Three held that while defense attorneys may decline to assert issues they consider frivolous, counsel's conduct in Chavez's case amounted to a complete denial of counsel at a critical stage. <u>Chavez</u>, 162 Wn. App. at 439. The court emphasized that <u>Anders</u> briefs are an <u>appellate</u> procedure designed for the withdrawal of counsel on appeal, that use of the procedure on a discrete issue in a trial court was completely inappropriate, and that use of "a procedure permitted on appeal but with no precedent or other authority for use in the trial court" raised "enough concern . . . to warrant a second look at the motion to withdraw." <u>Chavez</u>, 162 Wn. App. at 439-40.

Nothing remotely similar to counsel's conduct in <u>Chavez</u> occurred in this case. Schloredt's counsel followed proper procedures and was circumspect regarding her reasons for not pursuing Schloredt's motions. To the extent counsel's letters to Schloredt may have undermined Schloredt's motions, the State correctly points out that it was Schloredt, not his counsel, who submitted those letters to the court. Counsel acted at all times in a manner consistent with her ethical duty of candor to the court and her duties to her client. Schloredt's claim that he was denied his right to counsel is meritless.

Schloredt raises several additional claims in a pro se statement of additional grounds for review. Most of these claims were raised and rejected in Schloredt's post-trial motions. We review the court's decisions on those motions for abuse of discretion.

---

[1] <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

State v. Smith, 159 Wn. App. 694, 699-700, 247 P.3d 775 (2011); State v. Meridieth, 144 Wn. App. 47, 53, 180 P.3d 867 (2008).

Schloredt contends he was denied due process because the prosecutor failed to disclose exculpatory fingerprint evidence prior to trial. In rejecting this argument, the trial court noted that there was no exculpatory evidence to disclose. The evidence simply showed that a smudge on a tire inside the fenced area did not present a usable fingerprint. See State v. Romero, 113 Wn. App. 779, 796-97, 54 P.3d 1255 (2002) (absence of fingerprints does not mean absence of the defendant). The trial court did not abuse its discretion in rejecting this claim.

Schloredt also argues, as he did below, that his counsel was ineffective for eliciting and failing to object to testimony violating a ruling prohibiting any mention of needles in his bag. To demonstrate ineffective assistance of counsel, a defendant must show both deficient performance and a reasonable probability that, but for counsel's errors, the result of the trial would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance, and Schloredt bears the burden of demonstrating the absence in the record of a strategic basis for the challenged conduct. McFarland, 127 Wn.2d at 335. Schloredt has not met his burden.

Because there is no reasonable probability that the evidence affected the verdict, Schloredt cannot establish ineffective assistance of counsel. In rejecting this claim below, the trial court stated that "the evidence in this case was extremely overwhelming."[2] The court also noted that there was no evidence regarding the nature

---

[2] (Emphasis added.)

9

of the needles or any evidence of illegal drugs or drug use. In these circumstances, there is no reasonable probability that the evidence affected the verdict.

Schloredt's challenge to a brief hearsay statement by witness Jerral Sidles is also unavailing. As the trial court correctly noted, the substance of the hearsay—i.e., that someone else told her Schloredt was wearing a leather jacket the morning of the offense—came in properly through the testimony of several other witnesses. Schloredt himself admitted that he was wearing a leather jacket. Accordingly, the court was within its discretion in concluding that any error was harmless.

Next, Schloredt contends there was insufficient evidence to support his conviction. Evidence is sufficient if, when viewed in a light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wn .2d 634, 638, 618 P.2d 99 (1980).

The State had the burden of proving that Schloredt entered or remained unlawfully in the fenced yard with intent to commit theft. In ruling on Schloredt's motions below, the trial court concluded there was "an abundance of circumstantial evidence that Mr. Schloredt committed a burglary in this case." We concur. The evidence included testimony that a person was seen inside the tire store's fence. A short time later, another witness saw Schloredt throwing tires into a creek bed near the fence. Schloredt's truck was partially loaded with tires. The fence was damaged, and

tires that had been stacked in the fenced yard the day before were missing or on the ground. Schloredt's statements and conduct, particularly his rapid flight from the scene, demonstrate consciousness of guilt. The defense conceded he was guilty of theft and argued only that the evidence was insufficient to prove burglary. Schloredt's conviction is supported by sufficient evidence.

Last, Schloredt contends the calculation of his offender score of 24 is incorrect. Schloredt asserts all or a portion of his criminal history "washes out" because more than five years elapsed between certain convictions. But prior convictions do not wash out simply because five years elapsed between convictions. Rather, if the prior conviction was a class C felony, the offender must have spent five crime-free years in the community. RCW 9.94A.525(2)(c). If the prior conviction was a class B felony, the offender must have spent ten crime-free years in the community. RCW 9.94A.525(2)(b). Schloredt does not mention either the class of his prior convictions or the period of time he spent in the community between convictions. Schloredt thus fails to demonstrate error in his offender score.

Affirmed.

WE CONCUR:

11