IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35063-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MANUEL ARGOMANIZ-CAMARGO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Manuel Argomaniz-Camargo appeals from the trial court's refusal to allow him to withdraw his guilty plea to the charge of first degree murder of his girlfriend, arguing that his counsel did not competently argue his position. The problem with Mr. Argomaniz-Camargo's case was with his argument, not his counsel's performance. We affirm.

FACTS

A Washington State Patrol officer encountered Mr. Argomaniz-Camargo, covered in blood and carrying a small child, walking in the rain along the shoulder of Interstate 90 shortly after midnight on March 1, 2016. He was not wearing a shirt or shoes, although he had on a light coat and his socks. A mile away, law enforcement discovered a grisly crime scene at a vehicle parked on the side of the highway. Its doors and hatch were open, while some windows were broken out.

A woman's battered body lay on the ground near the vehicle, partially in the lane of travel, with her clothes in disarray. A hammer rested underneath the body, while a screwdriver was protruding from her chest. Knife wounds also were visible.[1] A rag had been stuffed in the vehicle's gasoline fill spout and had been lit on fire. The vehicle, however, did not burn.

The victim was Ana Veronica Motelongo Garcia, Mr. Argomaniz-Camargo's girlfriend, and the mother of the couple's child. In statements that were later suppressed by the trial court, Mr. Argomaniz-Camargo told officers that he had driven from Chicago and used methamphetamine to stay awake. He became paranoid and subject to hallucinations, which led to the attack on Ms. Motelongo Garcia.

A charge of first degree murder, along with two aggravating factors, was filed. An assistant attorney general was appointed to handle the prosecution. Attorney Michael Morgan, assisted by Kyle Smith, was appointed to represent Mr. Argomaniz-Camargo. Spanish language interpreters also worked with him.

The parties entered into plea negotiations, but Mr. Argomaniz-Camargo would not agree to a sentence in excess of 15 years, so discussions broke down. The defense prepared for trial and investigated potential defenses of diminished capacity, voluntary intoxication, and self-defense. A psychologist, Dr. Gregory Wilson, examined the

---

[1] In briefing, the prosecutor told the trial court that the victim was stabbed 28 times. Clerk's Papers at 71.

defendant, but was unable to find evidence to support the diminished capacity or intoxication defenses. The attorneys believed that self-defense was a weak claim since their client had suffered only a small cut on his finger.

The State made a plea offer, but Mr. Argomaniz-Camargo allowed the deadline to pass without accepting it. However, a week or so after the deadline, he decided to plead to the expired plea offer. The State agreed to renew its offer and a written plea agreement was entered. The information was amended to add a deadly weapon enhancement and a charge of possession of a controlled substance, but the two aggravating circumstances were deleted. The plea agreement recognized that the State would recommend a high-end sentence of 357 months and Mr. Argomaniz-Camargo could argue for a low-end sentence of 274 months.

The court accepted the defendant's plea of guilty to the amended charges on August 30, 2016; sentencing was scheduled for October 4. On September 16, Mr. Argomaniz-Camargo advised the court that he wanted to withdraw his guilty plea. He claimed that his attorneys confused him and had not investigated the case properly. Attorneys Morgan and Smith withdrew. Tim Trageser was appointed to represent Mr. Argomaniz-Camargo.

Mr. Trageser filed a motion to withdraw the guilty plea. The motion was predicated on his client's claim that his previous attorneys had coerced him into pleading guilty and that they provided ineffective assistance in their investigation of the case

3

against him. The motion also noted that neither of the attorneys agreed with their client's allegations. It asked for a fact-finding hearing so that Mr. Argomaniz-Camargo could testify to his evidence in support of a self-defense theory for withdrawing the guilty plea. Counsel noted that nothing in the discovery provided any additional support for that theory. An amended motion was filed after Mr. Trageser had conducted additional investigation requested by his client. In that motion, counsel noted that his review of the telephone records did not provide support for his client's motion.

The court granted the hearing and heard testimony from the two defense attorneys, both of whom denied pressuring or coercing their client. Mr. Smith explained that Mr. Argomaniz-Camargo had unrealistic expectations that he could serve little or no time for the killing and that the charge might even be dismissed. Smith used a hypothetical that asked his client whether, if someone had killed a member of his family, he thought it would be reasonable for the killer to get the charges dismissed. Mr. Argomaniz-Camargo said no.

The defendant also testified that he had repeatedly asked Mr. Morgan to show him the "entire file" and was constantly rebuffed. He also claimed to have insisted to Morgan that he wanted to go to trial and would be told what a bad idea it was. Mr. Trageser argued the motion to the court, asking the judge to find his client credible, but did so without disparaging Morgan and Smith.

The court issued its ruling in the open courtroom and blistered Mr. Argomaniz-Camargo's credibility and handling of plea negotiations. Finding that Morgan and Smith provided "excellent representation," the court denied the motion. Sentencing was set seven weeks later.

At sentencing, Mr. Trageser stated that his client had been "very well-represented" by Morgan and noted that the plea withdrawal motion "was problematic." He asked the court for the low-end sentence. The trial judge, however, imposed the top-end sentence of 357 months, a figure that included the 24 month deadly weapon enhancement.

Mr. Argomaniz-Camargo timely appealed to this court. A panel considered the appeal without hearing argument.

ANALYSIS

This appeal raises the sole issue of whether attorney Trageser rendered ineffective assistance by his argument of the new trial motion. The appellate argument confuses effective representation with unrealistic overzealousness. Because he cannot show deficient performance, his argument fails.

The standards governing review of this claim have long been settled. CrR 4.2(f) permits a guilty plea to be withdrawn whenever "necessary to correct a manifest injustice." The appropriate standard for applying this rule was set out in *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974):

> Under CrR 4.2(f), adopted by this court, the trial court shall allow a defendant to withdraw his plea of guilty whenever it appears that withdrawal is (1) *necessary* to correct a (2) *manifest injustice*, *i.e.*, an injustice that is obvious, directly observable, overt, not obscure. *Webster's Third New International Dictionary* (1966). Without question, this imposes upon the defendant a demanding standard.

The written statement form itself is sufficient to establish that the plea was voluntary. *State v. Lujan*, 38 Wn. App. 735, 688 P.2d 548 (1984).

A trial court's ruling on a motion to withdraw a guilty plea is reviewed for abuse of discretion. *State v. Olmsted*, 70 Wn.2d 116, 118, 422 P.2d 312 (1966). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Similarly well settled are the standards governing counsel's representation of a criminal defendant. Effectiveness of counsel is judged by the two pronged standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). That test requires the criminal defendant to show that (1) counsel's performance failed to meet a standard of reasonableness, and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. If a defendant fails to establish one prong, the other need not be addressed. *Id.* at 697. Effective assistance in the plea bargain context is judged by whether the attorney "actually and substantially assisted his client in deciding whether to plead guilty." *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901 (1981). Failure to assist would amount to a violation of the first prong of *Strickland*. *In re Peters*, 50 Wn. App. 702, 703-704, 750 P.2d

643 (1988). There is a strong presumption counsel was competent. *State v. Jamison*, 105 Wn. App. 572, 590, 20 P.3d 1010 (2001).

Mr. Argomaniz-Camargo raises several complaints about Mr. Trageser's handling of the motion. In particular, he complains that Trageser did not attempt to challenge the credibility of the former attorneys, accepted their conclusions as valid, and telegraphed to the judge that the motion to withdraw was without merit. He concludes that this amounts to a failure to advocate and likens this to the situation in *State v. Chavez*, 162 Wn. App. 431, 257 P.3d 1114 (2011). That case is not apropos.

There, a substitute attorney was appointed to argue a motion to withdraw a guilty plea based on original counsel's alleged conflict of interest. Substitute counsel filed an *Anders*[2] brief in support of the motion. *Id*. at 434, 436. On appeal, a divided panel of this court determined that it was not appropriate for appointed counsel to file, in the trial court, an *Anders*-type brief that acknowledges the lack of merit in an argument. *Id*. at 439-440. That, coupled with counsel's failure to develop the record concerning the potential conflict of interest, amounted to ineffective assistance of counsel. *Id*. at 440.

Trageser's advocacy here avoided both of those failures. He did not file an *Anders* pleading that expressly acknowledged the failure of his client's position. More importantly, he did develop the record concerning the plea negotiation process for the trial judge to

---

[2] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

consider. Attorneys Morgan and Smith were called in order to fully develop the record concerning the plea negotiation process and how they assisted their client in making the decision to accept the plea offer. Trageser was polite to the witnesses and acknowledged the strengths of their testimony while still focusing on issues, such as the amount of discovery the attorneys shared with their client, which supported the plea withdrawal motion. The fact that much of that evidence did not favor his client's position does not mean that counsel failed to advocate for the client. He squarely put before the trial court both the evidence and the argument needed to address his client's motion. This was not defective performance.

Mr. Argomaniz-Camargo argues that Trageser should have advocated more forcefully for his client's position, noting that counsel for a criminal defendant does not work under the same limitations on bringing a frivolous argument that other attorneys do. Although criminal defense attorneys may file arguments that other attorneys could not file, RPC 3.1, all attorneys owe a duty of candor to the court. RPC 3.3.

More strenuous argument likely would have only hampered the case. Mr. Trageser walked a fine line with the trial court. He was obligated to present his client's motion despite its obvious weaknesses, but he also had to maintain credibility with the trial court for the pending sentencing hearing. Emphasizing the incredible allegations was unlikely to successfully convince the trial court later that sentencing leniency was appropriate. His client's story of coercion and a conspiracy against him was not supported by the evidence.

8

Counsel understandably focused on those aspects of the testimony that supported a theory of insufficient investigation. An attorney "shall abide by a client's decisions concerning the objectives of representation," but need only "*consult* with the client as to the means by which they are to be pursued." RPC 1.2(a) (emphasis added). Counsel was under no obligation to argue strenuously for all of his client's testimony. Rather, he was free to argue those points that had a realistic chance of persuading the court.

Mr. Trageser appropriately developed and argued his client's theory. There is no basis for determining that he failed to live up to professional standards. Mr. Argomaniz-Camargo has failed to establish that his counsel performed ineffectively.

The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____         _____
Fearing, J.                                  Lawrence-Berrey, C.J.

9